## H. AKONA *v.* ANA KALUAI, SOMETIMES KNOWN AS AND CALLED ANA KAPANA.

### No. 1243.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

SUBMITTED MARCH 1, 1920.                    DECIDED MARCH 29, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

EVIDENCE—*marriage.*

Any evidence which is admissible, in those jurisdictions which recognize a common law marriage as valid, to corroborate the evi-

dence of such marriage is also admissible to corroborate the evidence of a ceremonial or statutory marriage.

SAME—*same.*

A marriage record kept by a priest and produced from the custody of his successor who is custodian of the record is admissible without proving that the entry was made by the priest who performed the marriage ceremony.

SAME—*cross-examination.*

Where one is given wide latitude in an attempt to test the memory of a witness it is proper for the court to exercise a sound discretion in excluding further cross-examination for that purpose.

OPINION OF THE COURT BY KEMP, J.

This is an action of ejectment. The appellee was plaintiff below and the appellant was defendant. Judgment was for the plaintiff and the defendant brings exceptions. It is admitted that W. Kapana at the time of his death on May 3, 1917, was the owner and in possession of the land in controversy. The plaintiff claimed the land under a deed from Emilia Kapana who claimed to be the widow and sole heir at law of said W. Kapana, deceased. The defendant's claim is that she and not the plaintiff's grantor is the widow and sole heir at law of said W. Kapana, deceased.

The circuit judge found that W. Kapana was at one time known as Keonikio Kapana and that he and Emilia W. Kapana were married in or about 1876; that subsequently in the year 1895 the said W. Kapana went through a marriage ceremony with the defendant but that at the time of this marriage the said W. Kapana was not legally divorced from his wife Emilia and that his subsequent marriage with the defendant was and is invalid owing to the existence of the prior valid marriage, and that the marriage between W. Kapana and Emilia existed at the time of his death. These findings of the circuit judge are amply supported by the evidence adduced at the trial and unless the court considered ille-

gal evidence or excluded legal evidence from which a different conclusion might be reached the decision and judgment based thereon should not be disturbed.

The exceptions presented relate principally to the reception of evidence which the defendant claims should have been excluded. Exceptions 1 and 2 complain of the overruling of her objection to the evidence of Malie Sniffen to the effect that Emilia and W. Kapana lived at her house about three years as husband and wife and that said Kapana stated to the witness that Emilia Kapana was his wife. And exception No. 3 is to the admission in evidence over her objection of a deed by W. Kapana to Mrs. Sniffen in which Emilia Kapana joined for the purpose of releasing her dower.

The argument of defendant is that as the plaintiff was relying upon a ceremonial marriage such evidence was irrelevant and incompetent.

In jurisdictions which hold that a common law marriage is valid, to constitute such a marriage there must be an agreement to become husband and wife immediately from the time when the mutual consent is given and if such an agreement is shown it is no more necessary to prove cohabitation or reputation than in the case of a ceremonial marriage, but in either case it is competent for the party seeking to establish the marriage to show for the purpose of corroborating the evidence of marriage that the parties lived together as husband and wife; that they or either of them admitted or otherwise declared that the marriage exists. On the other hand, if the parties or either of them have denied a marriage or admitted that none existed or otherwise made declarations repugnant to the existence of a marriage these statements may be considered as tending to disprove a marriage. (18 R. C. L. 392; 26 Cyc. 886.) The evidence was therefore properly received to corroborate the evidence of a ceremonial marriage.

The fourth exception is to the introduction in evidence of the marriage record book of the Catholic church at Halawa, Kohala, Hawaii, showing the marriage of Keonikio Kapana and Emilia. This was objected to on the ground that the first name or initial of the Kapana named in the record as having married is not the same as the Kapana who is the common source of title. As we have already stated the circuit judge found as a fact that W. Kapana was formerly known as Keonikio Kapana and that finding is supported by the evidence. The further objection to this evidence was that it was not shown that the entry of marriage was made at or about the time of the alleged marriage, or by Father Fabeano or a person authorized to make the entry. The book containing the marriage entry was produced by Father Theodose, the Catholic priest in charge of the church at Halawa and shown to be the legal custodian of the records of the church. The marriage record was required by law to be kept (Sec. 2912 R. L. 1915) and was competent evidence under these circumstances without proof that the entry was made by the priest who performed the marriage ceremony. *Rep.* v. *Waipa*, 10 Haw. 442.

The fifth, seventh and ninth exceptions have not been mentioned in appellant's brief and must therefore be regarded as abandoned.

Exception No. 6 goes to the overruling by the court of an objection by defendant to a question propounded by the plaintiff to a witness as to whether Kapana had the reputation of being a married man when he first knew him at Kawaihae. The answer of the witness being "no" the defendant cannot complain even if the ruling was erroneous.

Exception No. 8 is to the sustaining of plaintiff's objection to a question propounded to the witness Emilia Kamekona Kapoi on cross-examination as follows: "Do

you know when Queen Liliuokalani died?" Counsel contend that as the witness had theretofore testified that she was married to W. Kapana in 1876 the question was proper to test the witness' memory. They were given wide latitude in the cross-examination of this witness and many questions were asked for the same general purpose of testing her memory and the questions allowed. It was not shown that the witness knew the Queen or had any knowledge of the date of her death. Under these circumstances the court was justified in exercising its discretion to limit the cross-examination by sustaining the objection to this question.

The tenth and final exception is to cross-examination of the defendant as to whether or not Mr. E. A. Mott-Smith informed her that the present plaintiff had through his attorney demanded possession of the land in controversy. The defendant had testified that until the papers in this case were served upon her she had no knowledge that any other person claimed to own the land. The questions objected to were designed to lay the foundation for impeaching her on this point. She denied that Mr. Mott-Smith even told her that such demand was made on him. Mr. Mott-Smith's testimony did not directly contradict this statement — his remembrance being that he communicated the information as to the demand for possession to Mr. Ulukou who was acting as defendant's agent but he had no remembrance of having told the defendant. The whole matter was probably immaterial and could have been properly excluded on that ground but as the matter finally showed up in the testimony the defendant's statement was not contradicted and she could not have been prejudiced thereby.

Finding no merit in the exceptions the same are overruled.

*Watson & Clemons* for plaintiff.
*Andrews & Pittman* for defendant.